FT. WORTH & D. C. RY. CO. v. COURTNEY et ux. (No. 2128.)

(Court of Civil Appeals of Texas. Texarkana. June 10, 1919. Rehearing Denied June 26, 1919.)

1. CARRIERS ⬤=318(9)—EVIDENCE SHOWING NEGLIGENCE OF PORTER CAUSING INJURY TO ALIGHTING PASSENGER.

In an action for injuries to a railroad's passenger while alighting, when the porter had his knee on the step box, testimony *held* to warrant finding that porter was negligent when he so projected his knee over the box.

2. DAMAGES ⬤=130(3) — VERDICT OF $2,000 FOR PERSONAL INJURIES NOT EXCESSIVE.

Verdict for $2,000 for plaintiff railroad passenger, a married woman, who fell in alighting through the negligence of a porter, and broke a rib, dislocated a rib, and twisted or rotated her spine, *held* not excessive.

3. CARRIERS ⬤=321(23)—EVIDENCE INSUFFICIENT TO RAISE ISSUE OF UNAVOIDABLE ACCIDENT CALLING FOR INSTRUCTION.

In an action for injuries to a railroad passenger while alighting, testimony for plaintiff that she fell because the porter had put his knee across the step box *held* not to have made an issue as to whether the injury was the result of an unavoidable accident, to call for instruction thereon.

4. DAMAGES ⬤=62(2)—ONE SUSTAINING PERSONAL INJURIES IS BOUND ONLY TO REASONABLE CARE IN REDUCING DAMAGES.

One who has sustained personal injuries through another's negligence is bound only to exercise reasonable care and diligence to avoid loss, or to minimize the consequences of the injury.

5. TRIAL ⬤=260(1) — INSTRUCTION COVERED BY ONE GIVEN PROPERLY REFUSED.

Special charges, sufficiently covered by the instructions given the jury, were properly refused as mere repetition.

Appeal from District Court, Hunt County.

Suit by W. F. Courtney and wife against the Ft. Worth & Denver City Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

December 31, 1915, appellees, husband and wife, were passengers on one of appellant's trains from Wichita Falls to Ft. Worth. They claimed that Mrs. Courtney was injured in alighting from the train at the latter place under circumstances which she, testifying as a witness, stated as follows:

"When I started to get off the train, I was coming down the steps, and as I got down to the bottom step, and went to go down on the step box, the porter placed his foot, and as I raised my foot to step he extended his knee over the step, until I was forced to step on the edge of the box and fell. I had to step in a careening position, and sprained my ankle, and I fell. I had a glass cake stand under my arm, and

fell kinder back to my side like and across the porter's knee. I picked my foot up to make my step, and he extended his knee over, and I couldn't stop my step, because I was too near stepping to stop, and I made my step and fell. I got on the box, but near the edge, and my ankle turned, and I sprained my ankle and fell across his knee. The porter had his knee on the step box. As to whether he had it on top of the step box, he had it on it some way as I went to place my foot—he had his foot on it in some manner, and as I made my step to place my foot on the box his knee projected. I can't say that he did, and I can't say that he didn't have his foot stuck in the hole in the step box. * * * I can't say positive where he did place his foot"

—and which Courtney stated as follows:

"My wife went down the steps first, and while she was getting off the train I was stepping right behind her. There were a lot of people getting off, and there was a lady with some small children ahead of my wife and I. The lady was ahead, and then came the children next to her, and my wife was next to them. The porter picked up the little child from the bottom step of the car and turned and set it down on the platform of the depot. Then my wife stepped on the bottom step, and as she picked her foot up the porter turned and put his knee across the box, and she had to put her foot in this position (illustrating), and that made her in a strained position, and her ankle turned, and she fell backward across his knee. * * * When she fell, she had the fruit stand under her left arm this way (illustrating), and the foot of it caught her back here and bruised a place that long."

The porter had no recollection of the incident, and there was no other testimony than that of appellees as to the circumstances accompanying it.

There was testimony warranting a finding that the injury Mrs. Courtney suffered as a result of the accident consisted, in part, of a broken rib, a dislocated rib, and a twisting or rotation of her spine.

Alleging that the porter was guilty of negligence in projecting his knee over the step box, appellees sued, and recovered the judgment for $2,000, from which the appeal is prosecuted.

Thompson, Barwise, Wharton & Hiner, of Ft. Worth, and Dinsmore, McMahon & Dinsmore, of Greenville, for appellant.

Evans & Shields and H. L. Carpenter, all of Greenville, for appellees.

WILLSON, C. J. (after stating the facts as above). [1, 2] In the fourteenth and fifteenth assignments the judgment is attacked as erroneous because, appellant asserts, the testimony did not warrant a finding that the porter was guilty of negligence when he projected his knee over the step box, and because, appellant further asserts, if the testimony did warrant such a finding, it did not warrant a finding in appellees' favor for as great a sum as $2,000. The assignments will be overruled. That the jury had a right to say from the testimony that the porter, owing the duty he did to a passenger, was not without fault in projecting his knee over the step box as he did, is plain, we think. And certainly, if the consequences to Mrs. Courtney of the injury she suffered were as serious as testimony heard on appellees' behalf indicated they were, the judgment should not be set aside on the ground that it is for an excessive amount.

[3] The contention presented by the first and second assignments is that the trial court erred, in that he failed to submit to the jury an issue as to whether the injury to Mrs. Courtney was the result of an unavoidable accident or not. As we view the testimony, it did not make such an issue. If by the use of care the porter could have avoided projecting his knee over the step box (as, plainly, he could), the accident was an "avoidable," and not an "unavoidable" one. As supporting its contention, appellant relies mainly on Railway Co. v. Washington, 94 Tex. 510, 63 S. W. 534. "Clearly," appellant says, "if the evidence in the Washington Case raised the issue of accident, then the evidence in the case at bar does." But, as we view them, that case and this one are not at all alike. The testimony in that case, which the court held was sufficient to raise the issue, was that of the plaintiff, Washington, as follows:

"I was * * * walking up the railroad track, when I heard a train coming. * * * I stopped off the track and stood beside the passing train. Just as the last box car was passing me, I stepped close to the train, and as I did so my foot struck against something in the street, and I fell, and my feet went under the box car, and it cut both my feet off."

It is clear enough, we think, that if the injury to Washington happened in the way he said it did, it was the result of accident, and not of negligence on the part of the railway company; while in this case, if the injury to Mrs. Courtney happened as she and her husband said it did, it was not the result of mere accident, but of an act of the porter, which the jury had a right to say was in violation of the duty he owed to Mrs. Courtney.

[4] Of the 12 assignments remaining, several are predicated on the action of the court in instructing the jury as he did, and the others on his action in refusing special charges requested by appellant. We do not agree that the court's main charge was subject to any of the objections urged to it. On the contrary, we think the charge correctly and clearly presented to the jury all the issues made by the evidence. Nor do we agree that the special charge given at appellees' request, with reference to their conduct after Mrs. Courtney was injured, was erroneous. "One who has suffered personal injuries through the negligence or wrongful acts of another," said the writer of the article on "Damages" in 8 R. C. L. p. 442—

"is bound to exercise reasonable care and diligence to avoid loss, or to minimize the consequences of such injury, and he cannot recover for so much of his damage as results from his failure to do so. Thus he is bound to exercise reasonable diligence in securing medical or surgical aid, to take all reasonable care of the injury, and to make use of reasonable means to prevent any aggravation of it, or to effect its speedy and complete cure. He is not required to take the best of care of his injuries, however, nor to employ the means best adapted to heal them. It is sufficient that he act in good faith and with due diligence, and that he exercise only ordinary care and reasonable or ordinary prudence or judgment. If he does this, it is immaterial that the means employed do not effect a cure, or that another method of treatment might have given better results."

[5] We think the matters embraced in the special charges refused were sufficiently covered by the instructions given to the jury, and that, had the special charges, so far as correct, been given, they would have been a mere repetition in other words of instructions already given to the jury.

There is no error in the judgment, and it is affirmed.

---

&#9096;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes